NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
SEAN D. UNGER (SBN 231694)
seanunger@paulhastings.com
LUCAS V. GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100


Attorneys for Plaintiff
PICAYUNE RANCHERIA OF THE CHUKCHANSI
INDIANS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, a federally recognized Indian tribe, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| THE CHAIR OF THE NATIONAL INDIAN GAMING COMMISSION; UNITED STATES NATIONAL INDIAN GAMING COMMISSION; NORTH FORK RANCHERIA OF MONO INDIANS, a federally recognized Indian tribe; and DOES 1-10, | |
| Defendants. | |
| STATION CASINOS LLC, a Nevada limited liability corporation, and RED ROCK RESORTS, INC., a Delaware corporation, | |
| Nominal Defendants. | |

Plaintiff Picayune Rancheria of the Chukchansi Indians ("Picayune") brings this action to resolve a controversy concerning unlawful tribal gaming on off-reservation lands located in Madera County, California ("Madera Parcel").  Defendants are the North Fork Rancheria of Mono Indians of California ("North Fork"), the United States National Indian Gaming Commission ("NIGC"), and the NIGC's Chair.  Red Rock Resorts, Inc. and Station Casinos LLC (together, "Red Rock") are named as Nominal Defendants.

## THE CONTROVERSY

1.      This case arises from North Fork's long-running efforts to develop a new casino in California.  In 2014, millions of California voters rejected North Fork's proposed casino project.  North Fork sought to circumvent the effects of that democratic vote for more than a decade, but a California appellate decision recently confirmed that North Fork lacks the state-law approval necessary to operate its planned casino lawfully.  Notwithstanding that decision, North Fork has announced that it is proceeding with its casino project and plans to commence gaming activities in the coming months.  This lawsuit seeks to prevent that unlawful gaming before it starts, thereby giving proper effect to the vote of the People of the State of California and the decisions of the California courts on matters of state law.

2.      As background, the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, generally bars gaming on any Indian lands acquired after 1988, subject to certain statutory exceptions. One such exception, colloquially described as the "two-part determination," authorizes gaming if the Governor of the State in which the proposed gaming activities would take place concurs in the determination by the Secretary of the Interior ("Secretary") that gaming should be allowed based on factors identified in the statute.  25 U.S.C. § 2719(b)(1)(A).

3.      North Fork has long argued that it is entitled to carry out gaming under the two-part determination, but the California Court of Appeal recently determined, in a published decision, that the concurrence relied upon by North Fork never had any legal effect.  *See Picayune Rancheria of Chukchansi Indians v. North Fork Rancheria of Mono Indians*, 117 Cal.App.5th 91 (2025).  North Fork sought review of that decision, but the California Supreme Court denied review on April 1,

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

2026.  The California courts have therefore conclusively established that North Fork lacks the state-law approval necessary to operate its planned casino.

4.    Despite the final judgment in the California courts, however, North Fork has indicated that it plans to push forward with its casino project based on two purported authorizations from federal agencies.

5.    First, North Fork has relied on the NIGC's 2024 approval of a Management Contract between North Fork and its development partner, Red Rock.  In effect, that Management Contract purports to authorize Red Rock, a Las Vegas casino operator, to develop North Fork's casino and run day-to-day gambling on off-reservation lands.  As explained below, however, NIGC's approval of the Management Contract was unlawful:  NIGC could approve the Management Contract only if North Fork is entitled to conduct gaming under IGRA, but North Fork lacks the state-law concurrence necessary to make the planned gaming lawful—as the California courts' recent decisions make clear.

6.    Second, North Fork has maintained that it is entitled to conduct class III gaming under procedures issued in 2016 by the Secretary of the Interior ("Secretarial Procedures").  25 U.S.C. § 2710(d)(7)(A)(ii).  Those Secretarial Procedures, however, provide that North Fork may conduct class III gaming only "on eligible Indian Lands held in trust for the Tribe . . . and on which Class III Gaming may lawfully be conducted under IGRA."  North Fork cannot meet that requirement because it lacks the necessary state-law concurrence.  Picayune therefore seeks an injunction enforcing the Secretarial Procedures and barring North Fork from proceeding with unlawful gaming activities that would substantially harm Picayune and its members.

**PARTIES**

7.    Picayune is a federally recognized Indian tribe located near Coarsegold, Madera County, California.  Picayune is the beneficial owner of the Picayune Rancheria in Madera County, California.  Picayune owns and operates the Chukchansi Gold Resort and Casino on its Rancheria lands. Picayune conducts class III gaming at the Chukchansi Gold Resort and Casino in compliance with IGRA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8.    Defendant North Fork is a federally recognized Indian tribe organized under the provisions of the Indian Reorganization Act, 25 U.S.C. § 5123, under a written constitution that has been approved by the Secretary, and which designates the North Fork Tribal Council as the governing body of North Fork.  North Fork is also the beneficial owner of the North Fork Rancheria in Madera County, California.  In March 2005, North Fork submitted a fee-to-trust application to the Bureau of Indian Affairs within the U.S. Department of the Interior, requesting that the Department take into trust a 305-acre parcel in Madera County (the Madera Parcel) for North Fork's benefit.  The federal government took the Madera Parcel into trust in or around February 2013.  Picayune has proposed the development of a massive class III gaming and entertainment facility, the North Fork Mono Casino & Resort (the "North Fork Project"), on the Madera Parcel.

9.    Defendant NIGC is an independent federal agency within the Department of the Interior, established and organized pursuant to IGRA.  The NIGC has statutory enforcement powers and responsibilities under IGRA to regulate tribal gaming activities.  The Chair of the NIGC is the chief executive officer of the NIGC and has powers and responsibilities under IGRA, including but not limited to the power and responsibility to approve or disapprove management contracts for the operation of gaming activities.  The position of the Chair is currently vacant and therefore the true names and capacities of Defendants DOES ONE through TEN are unknown to Picayune, and Picayune will amend this complaint to allege such names and capacities once ascertained.

10.    Nominal Defendant Station Casinos LLC is a Nevada limited liability company established in 1976 that owns and operates seven major gaming facilities and 10 smaller casino properties in the Las Vegas regional market.  Station Casinos LLC has its principal offices located at 1505 South Pavilion Center Drive, Las Vegas, Nevada 89135.

11.    Nominal Defendant Red Rock Resorts, Inc. is a Delaware corporation formed in 2015 to manage and own an indirect equity interest in Station Casinos LLC.  Red Rock Resorts, Inc. owns all the outstanding voting interests in Station Casinos LLC, and has an indirect equity interest in Station Casinos LLC through its ownership of limited liability interests in Station Holdco LLC, which owns all of the economic interests in Station Casinos LLC.  As of March 31, 2026, Red Rock held 59% of the economic interests and 100% of the voting power in Station Holdco

- 4 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

LLC, and is designated as the sole managing member of both Station Casinos LLC and Station Holdco LLC.  Red Rock has its principal offices located at 1505 South Pavilion Center Drive, Las Vegas, Nevada 89135.

12.    On information and belief, Picayune alleges that either Station Casinos LLC or Red Rock Resorts, Inc. (or both) is a party to the Management Contract at issue in this action.

**JURISDICTION AND VENUE**

13.    This case presents federal questions under the laws of the United States, including the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and IGRA.

14.    The Court has jurisdiction over this action under 28 U.S.C. § 1362, which grants district courts original jurisdiction for all civil actions brought by any Indian tribe or band with a governing body duly recognized by the Secretary, wherein the matter in controversy arises under the Constitution, law, or treaties of the United States.

15.    The Court has jurisdiction over Picayune's claims against the NIGC and its Chair under 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action." *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).  Under the APA, the United States' sovereign immunity does not bar the asserted claims because Picayune seeks relief other than money damages.  5 U.S.C. § 702.

16.    The NIGC's approval of the Management Contract is a final agency action and may be challenged in district court by way of an APA action.  *See* 25 U.S.C. § 2714; 5 U.S.C. § 704.

17.    An actual, justiciable controversy now exists between Picayune and the NIGC, and the requested relief is proper under applicable law.  28 U.S.C. §§ 2201-2202; 5 U.S.C. § 706(2).

18.    The Court has jurisdiction over the cause of action against North Fork under 25 U.S.C. § 2710, which confers jurisdiction on the federal district courts for "any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact." 25 U.S.C. § 2710(d)(7)(A)(ii); *see Comanche Nation v. Ware*, 174 F.4th 717, 728-29 (10th Cir. 2026).  Because Tribal-State compacts are "functionally equivalent" to Secretarial Procedures, jurisdiction extends to causes of actions arising from violations of Secretarial Procedures.  *Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

at *5 (N.D. Cal. Nov. 10, 2025); *Stand Up for California! v. U.S. Dept. of the Interior*, 959 F.3d 1154, 1160 (9th Cir. 2020).

19.    Congress's enactment of 25 U.S.C. § 2710(d)(7)(A)(ii) "partially abrogate[d] tribal sovereign immunity," allowing this court to exercise jurisdiction over North Fork. *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 791 (2014).

20.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (e) because a substantial part of the events or omissions giving rise to Picayune's claims occurred in Madera County, and a substantial part of the property that is the subject of this action is situated in Madera County.  Pursuant to Local Rule 120(d), this action is being commenced in the Court's Fresno Division.

**STANDING**

21.    Picayune conducts lawful gaming activities at its Chukchansi Gold Resort and Casino and would face competition and not be able to govern itself effectively on its Picayune Rancheria ("Reservation") if North Fork's planned unlawful gaming occurs.

22.    Picayune members live in or around Madera County, California, and depend on gaming revenues for essential services.

23.    IGRA "provide[s] a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments," and is intended for the benefit of all Indian tribes, including Picayune.  25 U.S.C. § 2702.  Picayune has a legally protected interest in the conduct of lawful gaming activities on its Indian lands because those activities are authorized by and conducted in accordance with IGRA.

24.    Picayune has a legally protected interest in, and relies on the NIGC's proper fulfillment of, the NIGC's statutory obligations to authorize Indian tribes to conduct lawful gaming activities only in accordance with IGRA.

25.    Picayune's legally protected interest in its lawful gaming at its Chukchansi Gold Resort and Casino has been injured by the unlawful approval of the Management Contract by the Chair, and by North Fork's and Red Rock's reliance on the Chair's unlawful approval of the Management Contract to develop a casino and resort facility that would compete with the lawful

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

gaming Picayune offers.  If North Fork and Red Rock are allowed to conduct illegal gaming on the Madera Parcel pursuant to the North Fork Project, Picayune's gaming revenue from its Chukchansi Gold Resort and Casino will be substantially reduced, preventing Picayune from providing essential governmental programs, benefits, and services to its members, and interfering with the ability of Picayune to govern itself under its own laws on the Reservation.

26.     Picayune's legally protected interest in its lawful gaming also faces imminent injury from unlawful gaming on the Madera Parcel.  North Fork has stated it is committed to completing construction of the North Fork Project and offering class III gaming activities on lands that are not eligible for such gaming under IGRA and North Fork's Secretarial Procedures.  The unlawful gaming activities at North Fork's casino will directly compete with the lawful gaming activities that Picayune offers at its Chukchansi Gold Resort and Casino.

27.     The off-reservation North Fork Project—intentionally located close to major highways and population centers instead of on North Fork's Rancheria lands—would unfairly compete with Picayune's lawful gaming operations at the Chukchansi Gold Resort and Casino, which is located further from major highways and population centers on Picayune's Rancheria lands.  Conducting unlawful gaming on the Madera Parcel would lead to substantial reductions in gaming revenues at the Chukchansi Gold Resort and Casino, thereby causing significant financial harm to Picayune and its members and interfering with Picayune's ability to support its members through government programs and services funded with gaming revenues.

28.     Picayune's allegations are ripe for judicial determination.  Red Rock has published statements that North Fork and Red Rock view the approval of the Management Contract as a "pivotal milestone in advancing the North Fork Project" and that they intend to proceed with construction of the casino.[1]

29.     North Fork and Red Rock intend to engage in unlawful gaming at the North Fork Project despite recent decisions from California courts making clear that such gaming would be

---

[1] *See, e.g.*, *North Fork Rancheria of Mono Indians and Station Casinos LLC announce the Approval of a Management Agreement by the NIGC*, Red Rock Resorts (Jan. 11, 2024), https://redrockresorts.investorroom.com/2024-01-11-North-Fork-Rancheria-of-Mono-Indians-and-Station-Casinos-LLC-announce-the-Approval-of-a-Management-Agreement-by-the-NIGC.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

unlawful.  In May 2025, approximately one year after a California trial court confirmed that North Fork lacks the state-law approval necessary to conduct gaming at its planned casino, North Fork announced that it secured a $725 million loan to finance development of the casino—demonstrating North Fork's intent to proceed with the project notwithstanding the adverse decisions in the California courts.[2]  And as of June 5, 2026, after the California Court of Appeal's decision had become final, the website for the North Fork Mono Casino & Resort states that construction of the casino "has begun and will continue to ramp up in the next few months[,]" and that North Fork and Red Rock are anticipating "a grand opening date in Fall 2026!"[3]

## LEGAL FRAMEWORK

30.    In 1988, Congress enacted IGRA to create a regulatory framework for tribal gaming that balances the interests of Indian tribes, States, and the federal government.  *Amador Cnty., Cal. v. Salazar*, 640 F.3d 373, 376 (D.C. Cir. 2011) (citing 25 U.S.C. §§ 2701, 2702).

31.    IGRA provides for gaming only on "Indian lands," which are defined to include lands within the limits of an "Indian reservation" as well as lands held in trust by the United States "for the benefit of any Indian tribe."  25 U.S.C. §§ 2703(4), 2710(d)(1).

32.    Not all Indian lands are eligible for gaming.  Under section 20 of IGRA, Indian tribes are generally prohibited from conducting gaming on land that was acquired and taken into trust for the benefit of an Indian tribe after October 17, 1988.  25 U.S.C. § 2719(a).

33.    IGRA provides limited exceptions to the general prohibition on gaming on after-acquired lands.  *See* 25 U.S.C. § 2719(b)(1)-(3).  Under one such exception, commonly referred to as the "two-part determination" exception, gaming may occur on lands acquired after 1988 if the Secretary "determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted

---

[2] *See North Fork Rancheria Closes Financing For Casino and Resort Project*, Tribal Gaming and Hospitality (May 1, 2025), https://tgandh.com/news/tribal-stories/north-fork-rancheria-closes-financing-for-casino-and-resort-project/.

[3] *See Frequently Asked Questions*, North Fork Mono Casino & Resort, https://northforkcasino.com/#faq.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

concurs in the Secretary's determination." 25 U.S.C. § 2719(b)(1)(A); *see* 25 C.F.R. § 292.13. The validity of a governor's concurrence is governed by state law. *Confederated Tribes of Siletz Indians of Oregon v. United States*, 110 F.3d 688, 697 (9th Cir. 1997) ("If the Governor concurs, or refuses to concur, it is as a State executive, under the authority of state law. The concurrence (or lack thereof) is given effect under federal law, but the authority to act is provided by state law."); *United Auburn Indian Cmty. of Auburn Rancheria v. Newsom* (*United Auburn*), 10 Cal.5th 538, 548 (2020); *Stand Up for California! v. State*, 64 Cal.App.5th 197, 202 (2021) ("IGRA does not grant the Governor the authority to concur—that authority must come from state law.").

34.    IGRA also contemplates that tribes may enlist others to assist in the development and operation of gaming facilities. Under IGRA and regulations promulgated thereunder, an Indian tribe may enter into a management contract for the operation and management of a gaming facility, subject to approval by the Chair of the NIGC. *See* 25 U.S.C. § 2710(d)(9); 25 C.F.R. § 533.1.

35.    Under 25 C.F.R. part 531, any management contract must "[p]rovide that all gaming covered by the contract will be conducted in accordance with the Indian Gaming Regulatory Act[.]" 25 C.F.R. § 531.1(a).

36.    The Chair may approve a management contract only if it meets the standards of 25 C.F.R. part 531 and § 533.3. *See* 25 C.F.R. § 533.6(a). Management contracts that have not been approved by the Chair in accordance with the requirements of 25 C.F.R. part 531 are void. *See* 25 C.F.R. § 533.7.

37.    Separate from a governor's concurrence or any management contract, IGRA provides that class III gaming must be "conducted in conformance with a Tribal-State compact entered into by the Indian Tribe and the State[.]" 25 U.S.C. § 2710(d)(1)(C). Procedures issued by the Secretary are "functionally equivalent" to a Tribal-State compact for purposes of IGRA. *Blue Lake Rancheria*, 2025 WL 3141202 at *5; *Stand Up for California!*, 959 F.3d at 1160.

## BACKGROUND

**A. The North Fork Project.**

38.    North Fork, with assistance from Red Rock, seeks to develop the North Fork Project on the Madera Parcel. The Madera Parcel is located adjacent to State Route 99, a heavily trafficked

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

highway that runs through the major cities of California's Central Valley. The Madera Parcel is approximately 39 miles from Picayune's Chukchansi Gold Resort and Casino, and not on North Fork's 80-acre Rancheria.

39.    The fastest and most direct route to Picayune's Chukchansi Gold Resort and Casino for patrons driving from major population centers in the Central Valley or elsewhere in California is via State Route 99 and then State Route 41, a smaller, less-trafficked highway. Many of those patrons must pass the exit to the Madera Parcel on State Route 99 on the way to the Chukchansi Gold Resort and Casino.

**B. The Governor's Purported 2012 Concurrence, Proposition 48, and Related Litigation.**

40.    In 2011, the Secretary issued a favorable two-part determination regarding gaming on the Madera Parcel. The Secretary then requested the Governor's concurrence in the two-part determination.

41.    In August 2012, the Governor purported to issue a concurrence in the Secretary's two-part determination. On the same day, the Governor also purported to approve a Tribal-State Compact with North Fork.

42.    The concurrence and Tribal-State Compact were swiftly challenged by a statewide voter initiative known as Proposition 48, as well as subsequent litigation concerning the validity of the concurrence under California law. *See Stand Up for California! v. State*, 64 Cal.App.5th 197, 202-206 (2021) (describing the history of Proposition 48 and related legal challenges).

43.    In March 2016, Picayune brought an action in the Superior Court for the County of Madera to challenge the validity of the Governor's concurrence for the North Fork Project in the wake of Proposition 48. That litigation was stayed pending resolution of related litigation before the California Court of Appeal and California Supreme Court.

44.    The Secretary issued Secretarial Procedures for the Madera Parcel in July 2016. Those Secretarial Procedures permit class III gaming only "on eligible Indian lands held in trust for the Tribe, located within the boundaries of the Madera Parcel . . . and on which Class III Gaming

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

may lawfully be conducted under IGRA." Secretarial Procedures § 4.2 (Authorized Gaming Facility).

45. In 2020, the California Supreme Court took up two cases related to the Governor's concurrence power. One of those cases, *Stand Up for California!*, addressed the concurrence for the North Fork Project under California law. *Stand Up for California! v. State* (S239630, Cal. S. Ct. Mar. 22, 2017). The other case was *United Auburn*, which became the lead case. In its decision in *United Auburn*, the California Supreme Court held that, while the Governor had the power to concur in the Secretary's determination for purposes of IGRA's two-part determination exception, such power is not "indefeasible[.]" *Id.* at 555, 563. Following its decision in *United Auburn*, the California Supreme Court remanded *Stand Up for California!* to the California Court of Appeal. *See Stand Up for California!*, 64 Cal.App.5th at 206.

46. On remand, the California Court of Appeal found that the People retained the power to annul a Governor's concurrence since the Governor's power was not "indefeasible[.]" *Stand Up for California!*, 64 Cal.App.5th at 211-12. The Court of Appeal further concluded that the People exercised that power when voting on Proposition 48 in 2014, finding that vote "is reasonably interpreted as an expression of [the voters'] intent to reject class III gaming on the 305-acre Madera site taken into trust in February 2013." *Stand Up for California!*, 64 Cal.App.5th at 216. The Court of Appeal therefore held that the People's vote on Proposition 48 "impliedly expressed their will to annul" the Governor's concurrence for the Madera Parcel, *id.* at 216, and "[a]s a result, the concurrence is no longer valid," *id*. at 201. The California Supreme Court subsequently denied North Fork's petition for review.

**C. California Courts Confirm the Governor's Concurrence Was Never Valid.**

47. As noted, the Superior Court stayed litigation between Picayune, North Fork, and the Governor pending resolution of *United Auburn* and *Stand Up for California!*. The Superior Court lifted that stay shortly after the Court of Appeal's decision in *Stand Up for California!* in May 2021. And while the decision in *Stand Up for California!* resolved much of the dispute between the parties, North Fork and Picayune continued to disagree on whether the Governor's 2012 concurrence ever had legal effect. Picayune maintained that because the concurrence was

- 11 -

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

"annulled," it was void *ab initio* and never had legal effect, while North Fork argued that it did have legal effect for some period of time, and that North Fork could rely on that effect to bring itself within the two-part determination exception to the ban on gaming on after-acquired lands.

48.    During the litigation in the California Superior Court—and despite the 2021 decision in *Stand Up for California!*—North Fork and its developer partner, Red Rock, continued to pursue gaming activities on the Madera Parcel.

49.    On or about November 7, 2023, North Fork, Red Rock, and the North Fork Rancheria Economic Development Authority (the "Authority") executed the Management Contract. Pursuant to the Management Contract, Station Casinos has committed to assisting North Fork and the Authority in operating the North Fork Project on the Madera Parcel.

50.    In May 2024, the Superior Court, applying the decision in *Stand Up for California!*, confirmed that the Governor's concurrence never had legal effect.  The court noted that *Stand Up for California!* "clearly interpreted" the vote on Proposition 48 as foreclosing gaming on the Madera Parcel, and thus "the correct definition of annul is the one that supports this outcome to the extent controlled by state law, meaning that the Governor's concurrence has been retroactively determined to have never been effective." *Picayune Rancheria of the Chukchansi Indians v. Brown et el.*, MCV 072004 (Cal. Super. Ct. July 8, 2024) (Notice of Entry of Judgment).  The Superior Court then entered judgment in favor of Picayune, holding that "[t]hrough the People's vote on Proposition 48, the Governor's concurrence has been annulled rendering it void *ab initio*, and as such the Governor's concurrence never took effect and is not in effect." *Id*.

51.    On December 16, 2025, the California Court of Appeal affirmed the Superior Court's judgment.  *See Picayune Rancheria of Chukchansi Indians v. North Fork Rancheria of Mono Indians*, 117 Cal.App.5th 91 (2025).

52.    On April 1, 2026, the California Supreme Court denied North Fork's request for review, rendering the Superior Court's July 2024 judgment final for all purposes.

53.    North Fork and Red Rock have continued construction of the North Fork Project and have stated their intent to have a grand opening of the casino in the Fall of 2026.  That casino would make 2,400 slot machines and 40 house bank card and percentage games open to the public.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## FIRST CAUSE OF ACTION
### (Violation of the APA)

54.     Picayune re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs.

55.     IGRA provides that the Chair's approval of a management contract represents a final agency decision that is subject to challenge in the federal district court pursuant to the APA.  25 U.S.C. § 2714.

56.     Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A), (D).

57.     For class III gaming to occur lawfully on the Madera Parcel, the site must qualify for an exception under IGRA.  *See* 25 U.S.C. § 2719(a).

58.     North Fork purports to rely on IGRA's "two-part determination" exception to conduct gaming on the Madera Parcel.  That exception requires a valid determination from the Secretary "that a gaming establishment on [the Madera Parcel] would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community," as well as a valid "concur[rence]" in that determination from the Governor.  25 U.S.C. § 2719(b)(1)(A).

59.     The validity of a Governor's concurrence is a matter of state law.  *Confederated Tribes of Siletz Indians of Oregon*, 110 F.3d at 698; *see United Auburn*, 10 Cal.5th at 548.

60.     The California courts have held that, under California law, the Governor's concurrence for the Madera Parcel was void *ab initio* and never had legal effect.  *See Picayune Rancheria of Chukchansi Indians*, 117 Cal.App.5th at 114; *see also Stand Up for California!*, 64 Cal.App.5th at 216; *United Auburn*, 10 Cal. 5th at 548.

61.     Because the Governor never issued a valid concurrence, the Madera Parcel does not qualify for IGRA's two-part determination exception.

62.     The Madera Parcel also does not qualify for any other IGRA exception that would allow class III gaming to occur on that site.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

63.    The Chair may approve a management contract only if all gaming covered by the contract will be conducted in accordance with IGRA.  25 C.F.R. §§ 531.1(a), 533.6(a).

64.    Because the Madera Parcel does not qualify for any IGRA exception necessary to conduct class III gaming, the Chair's approval of the Management Contract was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law and must be vacated.

## SECOND CAUSE OF ACTION
### (Violation of Secretarial Procedures)

65.    Picayune re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 53.

66.    IGRA establishes a right of action by an "Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact [or equivalent Secretarial Procedures] . . . that is in effect[.]"  25 U.S.C. § 2710(d)(7)(A)(ii).

67.    Under IGRA, Class III gaming may be conducted only in conformance with either a Tribal-State compact or functionally equivalent Secretarial Procedures.  *See* 25 U.S.C. § 2710 (d)(7)(B)(vii); *Blue Lake Rancheria*, 2025 WL 3141202 at *5; *Stand Up for California!*, 959 F.3d at 1160.

68.    North Fork's Secretarial Procedures limit class III gaming to "eligible Indian lands held in trust for the Tribe, located within the boundaries of the Madera Parcel . . . and on which Class III Gaming may lawfully be conducted under IGRA."  Secretarial Procedures § 4.2 (Authorized Gaming Facility).

69.    For class III gaming to occur lawfully on the Madera Parcel, the site must qualify for an exception under IGRA.  *See* 25 U.S.C. § 2719(a).

70.    North Fork purports to rely on IGRA's "two-part determination" exception to conduct gaming on the Madera Parcel.  That exception requires a valid determination from the Secretary "that a gaming establishment on [the Madera Parcel] would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community," as well as a valid "concur[rence]" in that determination from the Governor.  25 U.S.C. § 2719(b)(1)(A).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

71. The validity of a Governor's concurrence is a matter of state law. *Confederated Tribes of Siletz Indians of Oregon*, 110 F.3d at 698; *see United Auburn*, 10 Cal.5th at 548.

72. The California courts have held that, under California law, the Governor's concurrence for the Madera Parcel was void *ab initio* and never had legal effect. *See Picayune Rancheria of Chukchansi Indians*, 117 Cal.App.5th at 114; *see also Stand Up for California!*, 64 Cal.App.5th at 216; *United Auburn*, 10 Cal. 5th at 548.

73. Because the Governor never issued a valid concurrence, the Madera Parcel does not qualify for IGRA's two-part determination exception.

74. The Madera Parcel also does not qualify for any other IGRA exception that would allow class III gaming to occur on that site.

75. Because the Madera Parcel does not qualify for any IGRA exception necessary to conduct class III gaming, the site does not qualify as "eligible Indian lands . . . on which Class III Gaming may lawfully be conducted " under IGRA or the Secretarial Procedures. Accordingly, any class III gaming on the Madera Parcel would be in violation of the Secretarial Procedures.

76. An actual case or controversy exists between Picayune and North Fork and Red Rock in that North Fork contends that it and Red Rock have the right to conduct class III gaming on the Madera Parcel pursuant to the Secretarial Procedures, while Picayune contends that such gaming would violate the Secretarial Procedures, IGRA, and California law.

## PRAYER FOR RELIEF

WHEREFORE, Picayune prays for entry of judgment in its favor and against the NIGC, its Chair, North Fork, and Red Rock and seeks relief that includes the following:

1. A judicial declaration to the effect that the Chair's approval of the Management Contract was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2. An order directing the NIGC and the Chair to set aside the Chair's approval of the Management Contract;

3. A judicial declaration to the effect that in the absence of a valid Governor's concurrence, the Madera Parcel does not qualify for IGRA's two-part determination exception under 25 U.S.C. § 2719(b)(1);

- 15 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

4.      An order enjoining all unlawful gaming, based on violations of Secretarial Procedures or otherwise, on the Madera Parcel, including both preliminary and permanent injunctive relief, as against any and all individuals and entities engaged in such activities;

5.      An award of costs in favor of Picayune, including reasonable attorneys' fees; and

6.      Such other and further relief as the Court deems just and proper.


DATED:  June 5, 2026                              PAUL HASTINGS LLP


                                                 By: */s/ Navi Singh Dhillon*
                                                     NAVI SINGH DHILLON

                                                 Attorneys for Plaintiff
                                                 PICAYUNE RANCHERIA OF THE
                                                 CHUKCHANSI INDIANS

COMPLAINT FOR DECLARATORY AND
                                                 INJUNCTIVE RELIEF